IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF WEST VIRGINIA

HUNTINGTON DIVISION

JANE L. LEWIS, Individually
and as Executrix of the Estate of
Etheline Brackenrich, deceased,

        Plaintiff,

v.                              CIVIL ACTION NO. 3:12-1675

JEFFREY LIKENS, individually, and
STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY, a foreign corporation,

        Defendants.

**MEMORANDUM OPINION AND ORDER**

Pending before the Court is the motion by Defendant State Farm Mutual Automobile Insurance Company ("State Farm") for summary judgment (ECF No. 23). For the reasons stated below, the motion is **GRANTED**, and the court **ENTERS** judgment in favor of Defendant State Farm on Count Three.

**Statement of Facts**

This case stems from an accident which resulted in the death of Etheline Brackenrich. On May 13, 2010, Ms. Brackenrich was a passenger in a car driven by Defendant Jeffrey Likens. Mr. Likens pulled out in front of a United Parcel Service tractor trailer, which collided with the car, resulting in Ms. Brackenrich's death. Mr. Likens was a volunteer at Hilltop Manor, a legally

unlicensed health care home[1] operated by Thomas and Patricia Christner. Ms. Brackenrich had been staying at Hilltop Manor since January 19, 2010.[2]

Jane L. Lewis, decedent's daughter and executrix of decedent's estate, commenced this litigation following the accident,[3] alleging Mr. Liken's liability for wrongful death (Count One). Ms. Lewis also alleged that her own State Farm insurance policy, which provided underinsured motorist ("UIM") coverage, covered her mother and that Ms. Lewis could therefore collect under that policy following her mother's death (Count Two). Ms. Lewis additionally sought a declaratory judgment that Ms. Brackenrich primarily resided with Ms. Lewis at the time of the accident and is therefore covered by the terms of the policy (Count Three). Lastly, Ms. Lewis alleged that State Farm engaged in common law bad faith (Count Four). This Court bifurcated

---

[1] A legally unlicensed health care home is defined as follows:
> Legally unlicensed health care home, unlicensed home, or home. -- Any place in this state in which a service provider provides accommodations and personal assistance, whether for compensation or not, for a period of more than twenty-four (24) hours, to one (1) to three (3) residents who are not related to the service provider or his or her spouse by blood or marriage within the degree of consanguinity of second cousin. These residents may be dependent upon the services of others by reason of physical or mental impairment or may require limited and intermittent nursing care, including those individuals who qualify for and are receiving services coordinated by a licensed hospice.

W. Va. Code R. § 64-50-2(2.6).

[2] Ms. Brackenrich was hospitalized beginning in December 2009 or January 2010. Before her hospitalization, Ms. Brackenrich had been living with her daughter Jane L. Lewis at Ms. Lewis's home for a few years. Ms. Brackenrich was discharged from the hospital and transferred to Holzer Medical Center's Rehabilitation Unit on January 8, 2010. She was then transferred to Hilltop Manor on January 19, 2010.

[3] Ms. Lewis died on November 13, 2012, roughly six months after this litigation was commenced but before State Farm filed the pending motion for summary judgment. There has not yet been a motion for substitution of a successor executrix. ECF No. 27, at 1 n.1. The memorandum in response to the motion for summary judgment indicates that Ms. Brackenrich's granddaughter is anticipated to become the successor executrix. ECF No. 26, at 1 n.1. Although a successor executrix has not yet been named, for the sake of clarity, this Court will nonetheless use "Plaintiff" or "Ms. Lewis" to refer to the party arguing against summary judgment.

Count Three from the other Counts and stayed discovery on those other Counts while the parties pursued discovery on Count Three and filed related dispositive motions. ECF No. 9.

State Farm filed the pending motion for summary judgment on January 11, 2013. ECF No. 23. State Farm concedes that Ms. Lewis's State Farm insurance policy does provide UIM coverage for "resident relatives." Under the terms of the policy, a "resident relative" is a person who "resides primarily" with the policy's first named insured. Amendatory Endorsement 6948A, ¶ 3(a), Ex. C, ECF No. 23. State Farm argues that at the time of the accident, Ms. Brackenrich was not residing primarily with Ms. Lewis (the first and only named insured on the policy), and therefore Ms. Brackenrich is not covered by the policy. State Farm argues that no genuine issue of material fact exists on this issue, and that State Farm is therefore entitled to judgment as a matter of law. Plaintiff counters that Ms. Brackenrich did reside primarily with Ms. Lewis at the time of the accident; in support of this argument, Plaintiff points to, *inter alia*, a transcript of a telephone conversation with an adjuster from State Farm. Ex. 3, ECF No. 25.

In Section I, the Court discusses generally the standard of review applicable to motions for summary judgment. In Section II, the Court addresses State Farm's argument that the transcribed phone conversation is inadmissible hearsay under the Federal Rules of Evidence. In Section III, the Court examines whether Ms. Brackenrich "resided primarily" with her daughter Ms. Lewis such that she was covered by Ms. Lewis's State Farm insurance policy.

## I. Standard of Review

To obtain summary judgment, the moving party must show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). In considering a motion for summary judgment, the Court will not "weigh the evidence and determine the truth of the matter[.]" *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242,

249 (1986). Instead, the Court will draw any permissible inference from the underlying facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986).

Although the Court will view all underlying facts and inferences in the light most favorable to the nonmoving party, the nonmoving party nonetheless must offer some "concrete evidence from which a reasonable juror could return a verdict in his [or her] favor[.]" *Anderson*, 477 U.S. at 256. Summary judgment is appropriate when the nonmoving party has the burden of proof on an essential element of his or her case and does not make, after adequate time for discovery, a showing sufficient to establish that element. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). The nonmoving party must satisfy this burden of proof by offering more than a mere "scintilla of evidence" in support of his or her position. *Anderson*, 477 U.S. at 252.

## II. Admissibility of Ms. Lewis's Telephone Conversation with State Farm

To support Plaintiff's opposition to summary judgment, Plaintiff submits the transcript of a telephone conversation between Ms. Lewis and State Farm adjuster Debbie Clem, which took place on July 13, 2011. Ex. 3, ECF No. 25. Plaintiff argues that the transcript is admissible under Federal Rule of Evidence 804, because the declarant is now deceased; Plaintiff does not specify, however, which hearsay exception this statement satisfies. State Farm argues that the transcript does not satisfy any of the hearsay exceptions under Rule 804, and is therefore inadmissible hearsay. Under Federal Rule of Civil Procedure 56(c)(2), a party may object to the consideration on summary judgment of evidence that would not be admissible at trial.

Federal Rule of Evidence 804 provides certain exceptions to the rule against hearsay for declarants who are unavailable as witnesses; under Rule 804(a)(4), death is one form of

-4-

unavailability. The hearsay exception most likely implicated by the transcript is the former testimony exception,[4] which applies to the following evidence:

> Testimony that:
> (A) was given as a witness at a trial, hearing, or lawful deposition, whether given during the current proceeding or a different one; and
> (B) is now offered against a party who had — or, in a civil case, whose predecessor in interest had — an opportunity and similar motive to develop it by direct, cross-, or redirect examination.

Fed R. Evid. 804(b)(1). This transcript does not satisfy the former testimony exception. Ms. Lewis stated in the conversation that she was aware the conversation was being recorded, and that she gave permission for the conversation to be recorded. Ex. 3, at 1, 10. Her lawyer was present for the conversation, and occasionally added in information during the course of the conversation. However, there is no indication that any sort of oath was administered or that Ms. Lewis otherwise swore to speak truthfully. Therefore, the statement is neither that of a witness at a trial or hearing, nor a lawful deposition, and does not meet prong (A). The statement does not meet the former testimony exception, or any other exceptions to the hearsay rule; it is therefore inadmissible, and will not be considered by the Court on summary judgment.

### III. Examination of Whether Ms. Brackenrich Resided Primarily With Ms. Lewis

State Farm and Plaintiff concede that the operative question on summary judgment regarding Count Three is whether Ms. Brackenrich was a "resident relative" under the terms of Ms. Lewis's State Farm policy.

Plaintiff Jane L. Lewis is the first and only named insured under State Farm policy number 1253214-F02-48M, which renewed/replaced policy number 1253214-48L. Declarations

---

[4] The conversation does not appear to qualify as a statement of personal or family history, which is the only other possible Rule 804 exception that could apply. *See* Fed R. Evid. 804(b)(4). In looking at exceptions that do not depend on the witness's unavailability, the only exception possibly applicable is for records of regularly conducted activity, but the parties have not argued that that statement falls into that exception. *See* Fed R. Evid. 803(6).

Page, Ex. C, ECF No. 23. This policy provides for UIM coverage. *Id.* In addition to Ms. Lewis, UIM coverage also extends to "resident relatives." *Id.*, State Farm Car Policy Booklet, at 16.[5] "Resident relative" is defined as follows:

> Resident relative means a person, other than you, who resides primarily with the first person shown as a named insured on the Declarations Page and who is:
> 1. related to that named insured or his or her spouse by blood, marriage, or adoption, including an unmarried and unemancipated child of either who is away at school and otherwise maintains his or her primary residence with that named insured; or
> 2. a ward or foster child of that named insured, his or her spouse, or a person described in 1. above.

*Id.*, Amendatory Endorsement 6948A, ¶ 3(a) (emphasis in original deleted). The policy does not define the phrase "resides primarily."

When considering insurance policy language, "[w]here the provisions of an insurance policy contract are clear and unambiguous they are not subject to judicial construction or interpretation, but full effect will be given to the plain meaning intended." Syl., *Keffer v. Prudential Ins. Co.*, 172 S.E.2d 714 (W. Va. 1970). This Court finds that "resides primarily" is an unambiguous term.

In *Tucker Farmers Mut. Ins. Co. v. Tucker*, 576 S.E.2d 261 (W. Va. 2002), the Supreme Court of Appeals of West Virginia examined that meaning of "your relatives if residents of your household," as found in a Farmers Mutual insurance policy. In that case, a father claimed that his thirty-eight-year-old son, who lived by himself in a mobile home on the father's property, was a resident of the father's household; that son paid no rent, no leasing agreement existed, and the son worked on the father's farm, located on the property. The supreme court of appeals first noted that "residence" could have different meanings in different contexts, and that "while a

---

[5] UIM coverage also extends to other categories of individuals connected to the insured, but Ms. Brackenrich does not fall into these other categories.

-6-

person may have only one true domicile, he or she may have more than one 'residence.'" *Id.* at 266 (citations omitted). Furthermore, individuals could still be part of the same household even if they did not live under the same roof. *Id.* at 270. The court, applying this reasoning, found that a jury could reasonably view the son to be a resident of the father's household.

The District Court for the Southern District of West Virginia, however, has distinguished the phrase "household," as discussed in *Tucker*, from the phrase "resides primarily." *Lafferty v. State Farm Mut. Auto. Ins. Co.*, No. 2:10-CV-00175, 2011 WL 777886 (S.D. W. Va. Feb. 25, 2011). In *Lafferty*, the district court explained the meaning of "resides primarily" in the context of a State Farm insurance policy which provided UIM coverage for "resident relatives" of the insured, the same operative language in the instant case. In deciding whether a decedent son primarily resided with his father, the district court "not[ed] that courts in other jurisdictions have interpreted the policy term 'resides primarily' to mean that the person resided at one particular place 'for the most part' or 'chiefly.'" *Id.* at *2 (citing *State Farm Mut. Auto. Ins. Co. v. Fultz,* No. 2:06-cv-15, 2007 WL 2789461, at *4 (N.D. W. Va. Sept. 24, 2007); *State Farm Mut. Auto. Ins. Co. v. Harris,* 882 So. 2d 849, 854 (Ala. 2003)). The district court in *Lafferty* found the *Tucker* decision distinguishable from the facts before it, and "agree[d] with the authorities above in concluding that 'primarily' means something more than mere residence in a household." *Id.* at *2 n.2 (citing *Harris*, and also referring to *Fultz*).

The *Lafferty* court then found that the decedent son did not reside primarily with his father, based on a statement signed by the decedent and his fiancé stating that the couple lived in a trailer elsewhere, and also based on depositions of the father, mother, and fiancé, which all confirmed that the decedent did not live with his father. Affidavits from the mother and father stated that the decedent spent most nights at the trailer, but that he spent most days at his parents'

house, where he had some personal effects and sometimes received mail. The district court found that although "[t]he two affidavits may be sufficient to create an issue of material fact as to whether the decedent spent a large amount of time at his father's residence, . . . that fact is not material to the resolution of this dispute," namely, the meaning of "resides primarily." *Id.* at *3.

This Court is mindful, just as *Lafferty* explained, that other jurisdictions have similarly held that an individual can be said to primarily live in only one place, and have given "resides primarily" its plain meaning. For example, in *Harris*, the court noted that "primarily" was defined in the dictionary as "chiefly" or "for the most part," and the court therefore "fail[ed] to see how a person may 'primarily' or 'for the most part' live in more than one place at one time." 882 So. 2d at 854; *see also Bolin v. Progressive Nw. Ins. Co.*, No. 2:07-cv-0049, 2009 WL 1010770, at *8 (E.D. Mo. Apr. 9, 2009); *Drexler v. Phoenix Ins. Co.*, No. Civ.A. 3:04-CV-578-S, 2006 WL 581015, *4 (W.D. Ky. Mar. 3, 2006); *Wallace v. State Farm Mut. Auto. Ins. Co.*, No. F-017-012, 2007 WL 4216132, at *3 (Ohio Ct. App. Nov. 30, 2007); *Bauer v. USAA Cas. Ins. Co.*, 720 N.W.2d 187, 190 (Wis. Ct. App. 2006) (giving "primarily" a similar meaning, and noting that "[t]he modifier 'primarily' makes the phrase 'resides primarily with you' unambiguous, at least as applied to the facts of this case.").

In line with the cases above, this Court finds that "resides primarily" is an unambiguous term, and refers to the chief or main residence of an individual. This Court also believes that an individual can have only one "primary residence" at a given time, and that this phrase is to be distinguished from "resident of a household."

It is helpful for the Court to briefly review the evidence presented on the issue of residence. From the date of Ms. Brackenrich's admission to Hilltop Manor on January 19, 2010, to the date of the accident on May 13, 2010, Ms. Brackenrich did not sleep overnight at Ms.

Lewis's residence. Pl.'s Resp. to State Farm's First Reqs. For Admis., ¶ 2, Ex. E, ECF No. 23. Ms. Brackenrich may have visited Ms. Lewis's home again sometime after being transferred to Hilltop. *Id.* ¶ 3. The Christners provided 24-hour-a-day care for Ms. Brackenrich, including laundry, food preparation, administering medication, and assisting with hygiene functions. Dep. of Patricia Christner 17-19, 30-31, Nov. 27, 2012, Ex. B, ECF No. 23. Some of Ms. Brackenrich's personal effects were at Hilltop Manor, including a hospital bed provided by her family. *Id* at 14-15. It was Patricia Christner's understanding that Ms. Brackenrich would be staying at Hilltop Manor permanently. *Id* at 39. Most patients at Hillptop Manor lived there permanently until their death. *Id*. at 39. Indeed, Hilltop Manor was not a rehabilitative facility. Dep. of Thomas Christner 11, Nov. 27, 2012, Ex. D, ECF No. 23. Patricia Christner, in her deposition, relayed a conversation where Ms. Lewis stated "she (Ms. Lewis) could not take care of her mother 'cause she was tired of her pissing in her house" and "I (Ms. Lewis) just can't take it, she's stinking up my basement." Patricia Christner Dep. 38-39. Ms. Brackenrich received cards in the mail at Hilltop Manor. *Id.* at 37. Other mail for Mrs. Brackenrich was received at Ms. Lewis's house. ECF No. 26, at 3. Ms. Lewis held a joint bank account with her mother, and the address on file was Ms. Lewis's address. *Id.* at 3.[6]

The Court finds that there is no genuine issue of material fact regarding where Ms. Brackenrich "resided primarily" for purposes of the insurance policy at issue. The Court finds that Ms. Brackenrich resided primarily at Hilltop Manor at the time of her death, and that a jury could not reasonably find that Ms. Brackenrich instead resided primarily with her daughter Ms.

---

[6] Additionally, Ms. Lewis stated, in the inadmissible telephone conversation, that it was her own desire to bring her mother back to live with her, but she did not know if this was feasible. Ex. 3, at 5, ECF No. 25. Ms. Lewis also stated in that conversation that she managed her mother's financial and medical matters, including during her mother's stay at Hilltop Manor. *Id.* at 6, 8. However, the Court cannot consider this conversation, as it is inadmissible hearsay.

Lewis at the time of the accident. This outcome would be the same even if the Court were to consider the inadmissible telephone conversation offered by Ms. Lewis. The Court notes that although Ms. Brackenrich may have spent some time away from Hilltop Manor visiting with family or others, she spent the majority of her waking hours at Hilltop Manor, and she never spent a night away from Hilltop Manor after she was transferred there. Ms. Lewis expressed that she was either unable or unwilling to take care of her mother, and so the Christners provided 24-hour care for Ms. Brackenrich at Hilltop Manor. Ms. Christner believed that Ms. Brackenrich would be staying permanently at Hilltop Manor. Even if Ms. Lewis desired that her mother would return to live with her, there were no plans for Ms. Brackenrich to move out of Hilltop Manor in the foreseeable future. Taken together, the evidence only permits the conclusion that Ms. Brackenrich resided primarily at Hilltop Manor.

Plaintiff argues that Ms. Brackenrich did not reside primarily at Hilltop Manor because Ms. Brackenrich did not voluntarily live there; rather, her placement at Hilltop Manor was done out of necessity because Ms. Lewis could not provide the care her mother required. Although intent is a factor in determining if somebody is a member of a household, *see Tucker*, 576 S.E.2d at 270, intent should not be confused with desire. Although Ms. Lewis and her mother may have *desired* for Ms. Brackenrich to be able to live with Ms. Lewis, the parties *intended* for Ms. Brackenrich to stay at Hilltop Manor for the foreseeable future so that Ms. Brackenrich could receive necessary care.

Plaintiff also argues that the concept of "household" carries the connotation of involving familial bonds, citing *Tucker*, and points out that the Christners were paid monthly to take care of Ms. Brackenrich; because of such payment and the lack of familial bond, Plaintiff argues, a legally unlicensed health care home cannot be considered a residence. The Court notes, though,

-10-

that *Tucker* involved the phrase "residents of your household" and so the factors used to understand that phrase[7] do not necessarily apply in same way to the present case. Also, many individuals live in a dwelling apart from other family members and pay monthly to stay in that dwelling, although they may wish to live somewhere else if their circumstances were different; this does not preclude the individual from being said to "reside" at that dwelling. The fact that the Christners were paid to take care of basic care functions for Ms. Brackenrich, in addition to providing lodging, does not change this conclusion.

While Plaintiff also stresses that one factor in residency is duration, consideration of duration does not upset the Court's conclusion. Hilltop Manor was not a rehabilitation facility where patients were expected to only stay temporarily before living elsewhere, but rather a place where most residents lived until their death. Although Plaintiff had only stayed at Hilltop Manor for a few months before her death, she would have likely remained there for the foreseeable future had the accident not occurred.

Plaintiff also points to Virginia Code § 64.2-443[8] in opposition to summary judgment, which states as follows:

> Where any person has become, either voluntarily or involuntarily, a patient in a nursing home, convalescent home, or similar institution due to advanced age or impaired health, the place of legal residence of the person shall be rebuttably presumed to be the same as it was before he became a patient.

Though Virginia state law can sometimes provide guidance where West Virginia law is otherwise ambiguous, here case law is clear about the meaning of "resides primarily." Also,

---

[7] "The factors to be considered in determining whether that standard [of "residents of your household"] has been met include, but are not limited to, the intent of the parties, the formality of the relationship between the person in question and the other members of the named insureds' household, the permanence or transient nature of that person's residence therein, the absence or existence of another place of lodging for that person, and the age and self-sufficiency of that person." *Tucker*, 576 S.E.2d at 270.

[8] Plaintiff cited this statute as § 64.1-76, but this is its earlier number before amendment.

-12-

regardless, this Virginia statute involves probate of wills, and so is not directly applicable to the present situation. In fact, the definition of "resident" of a legally unlicensed health care home encompasses Ms. Brackenrich:

> Resident. -- An individual who is provided services, whether or not for a fee, by a service provider, but resident does not include a person receiving services provided by another who is related to him or her or the spouse thereof by blood or marriage, within the degree of consanguinity of the second cousin.

W. Va. Code R. § 64-50-2(2.14). Plaintiff also points to West Virginia absentee voting laws as showing that the elderly do not surrender their residence, but such statutes shed no light on the meaning of residence as applicable to this case. This Court has not found any West Virginia statutes which indicate that an individual cannot be said to reside primarily at a legally unlicensed health care home.

## Conclusion

For the reasons stated above, Defendant State Farm's motion for summary judgment (ECF No. 23) is **GRANTED**, and the court **ENTERS** judgment in favor of Defendant State Farm on Count Three.

The Court **DIRECTS** the Clerk to send a copy of this written Opinion and Order to counsel of record and any unrepresented parties.

ENTER: February 20, 2013

_____
ROBERT C. CHAMBERS, CHIEF JUDGE